UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

<u>Court Minutes</u>

DATE:                          July 13, 2017
JUDGE:                         Pamela Pepper
CASE NO:                       2017-cr-31
CASE NAME:                     United States of America v. Kenneth Churchill
NATURE OF HEARING:             Sentencing
APPEARANCES:                   Michael Steinle – Attorney for the defendant
                               Kenneth Churchill – Defendant
                               Benjamin Proctor – Attorney for the plaintiff
                               James Fetherston – US Probation
COURTROOM DEPUTY:              Chrissy Bongel
TIME:                          9:00 a.m. – 10:09 a.m.
HEARING:

The court had scheduled today's hearing for a sentencing on the defendant's guilty plea to a one-count information charging him with knowingly and intentionally distributing heroin in violation of 21 U.S.C. §§841(a)(1) and 841(b)(1)(c). The court asked whether defense counsel had had the opportunity to review  the presentence investigation report with the defendant; counsel confirmed that he had. Counsel for the government confirmed that he had had the opportunity to review the sentencing report, as well as all of the letters written in support of the defendant.

The court began by addressing the Sentencing Guidelines calculations contained in the presentence report. The court explained that, while the Guidelines were advisory, the law required the court to begin its sentencing analysis with those advisory guidelines, and then to consider whether they were adequate to address the factors in §3553.

The court noted that neither party had objected to the Guidelines calculations in the PSR. The base offense level, based on possession and distribution of 100 grams or more of heroin, was 24. The PSR recommended a 2-level increase because the defendant had possessed a firearm during one of the offenses, which increased the offense level to 26. The PSR recommended a 2-level decrease under §3E1.1(a) for acceptance of responsibility, and during the sentencing hearing, the government moved for an additional 1-level decrease under §3E1.1(b). The court granted that motion, and deducted 3 levels, for an adjusted offense level of 23. The defendant's criminal history category was I; an adjusted offense level of 23 in criminal history category I yielded an advisory sentencing range of 46 to 57 months. Neither party objected to these calculations.

The prosecutor told the court that on the one hand, the defendant was a successful business person who owned a limo service and rental properties,

but that on the other hand, he was a heroin addict and a drug dealer. Counsel told the court that the defendant was responsible for distributing a large quantity of heroin in the Milwaukee area—70 grams alone in just the controlled buys. Counsel opined that the defendant did not deal drugs because he needed the money, either to live on or to support his own heroin habit; he dealt drugs because he liked being a drug dealer. Counsel conceded that the defendant had a limited criminal history, had timely accepted responsibility, appeared remorseful for his conduct and had been doing well in his most recent rehabilitation effort. But, the prosecutor argued, the court's sentence needed to promote respect for the law, deterrence and just punishment while keeping the community safe. The government recommended that the court impose a term of incarceration within the advisory guideline range, as well as a fine equal to the amount of the lost buy money.

Counsel for the defendant agreed with much of what the government said, but did not agree that the court needed to impose a sentence within the guideline range in order to address the §3553 factors. Counsel reminded the court that the defendant had cooperated, even though his efforts had not resulted in the government filing a §5K1.1 motion. Defense counsel told the court that it was the defendant's addiction to heroin that had caused him to be in this court. He agreed with the government that, with no high school degree, the defendant had managed to build two successful businesses—the limousine business and the property business. But due to his addiction, he now had nuisance problems with his rental properties, and stood to lose everything he'd built over the years. The defendant had three grown children, all of whom were prosocial people, but he had little contact with them. The defendant had given donations to the Make-A-Wish Foundation, and had given back to the community. Counsel told the court that the defendant had been trying to play both sides of the fence—use drugs, but hide that addiction from the world. Counsel argued that the defendant was a relatively small-scale dealer, and that he had decided to cooperate, and to accept responsibility, before counsel ever began to represent him. Defense counsel acknowledged that the defendant's crimes required the court to impose a sentence of incarceration (rather than the probation that the defendant and those who loved him hoped for), but asked the court to impose a below-guidelines sentence of twenty-four months, and to recommend the RDAP program. He also asked the court to recommend that the Bureau of Prisons place the defendant at a facility as close to the Eastern District of Wisconsin as possible.

Rosemary Medina, the defendant's former romantic partner and current business associate, spoke on the defendant's behalf. She told the court that the defendant was a very good man, very generous, always giving to those in need.

She indicated that he was very hard-working, and had a good heart. She begged the court not to take away everything from him due to one mistake.

The defendant spoke briefly on his own behalf, but provided the court a written statement, which the court read into the record.

The court agreed with the government that there were two sides to the defendant. The first was a hard-working person who had created a life for himself that many people more educated did not have, who was able to give to charities and to create strong, positive relationships with people. The other person was an armed heroin dealer. The court discussed the fact that several of the letters of support people had written on behalf of the defendant—as well as Ms. Medina's remarks—had indicated that the defendant had made a mistake. The court opined that a "mistake" was something people did by accident, and that the defendant—rather than making a mistake—had made a conscious choice to deal heroin. It was a choice he had repeated at least six times. He also had chosen to carry a firearm when dealing that heroin. The defendant was financially stable, and thus didn't need to deal heroin for money. He didn't need to deal heroin to support his addiction. The court was mystified—not as to why the defendant starting *using* heroin, but why he started *dealing* it. In the positive column, the court gave the defendant credit for expressing remorse, cooperating and being clean for sixty days. The court concluded that a sentence of forty months of incarceration, followed by a term of three years of supervised release, was sufficient but not more than necessary to take into account the §3553 factors. The court imposed a fine of $9,050.00, and a special assessment of $100.00. The court agreed to recommend that the Bureau of Prisons place the defendant in a facility as close as possible to the Eastern District of Wisconsin, and to place him in a facility that provides the Residential Drug Abuse Program.

The court imposed conditions of supervised release, which the judgment will reflect. The defendant did not object to the conditions.

The court advised the defendant that he had a right to appeal, that he had a limited time in which to do so, and that he should discuss his appeal rights with his attorney. The court will enter judgment reflecting the above sentence.

Counsel for the defendant asked the court to allow the defendant to surrender voluntarily. Counsel for the government reminded the court that the statute mandated remand. The court allowed the defendant to self-surrender as directed by the probation officer. The court advised the defendant that if he committed any violations of his bond between now and his surrender date, probation would notify the court and the court would issue a warrant.